UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN DOE, II, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. C-08-299 |
| | § | |
| ST. STEPHEN'S EPISCOPAL SCHOOL, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On June 22, 2009, this Court held a hearing in the above-styled action to consider (1) the Joint Motion of St. Stephen's Episcopal School, Robert E. Kirkpatrick, his predecessors and successors, as headmaster of St. Stephen's Episcopal School, Protestant Episcopal Church Council of the Diocese of Texas, and the Right Reverend Don A. Wimberly, D.D., his Predecessors and Successors, as Bishop of the Episcopal Diocese of Texas to Transfer Venue (D.E. 39.) and (2) Defendants' discovery motions. (D.E. 47.) For the reasons set forth below, the motion to transfer is hereby DENIED and Defendants' discovery motions are hereby GRANTED.

### I. Jurisdiction

This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### II. Factual and Procedural Background

Plaintiffs allege as follows in their Third Amended Complaint: Plaintiffs John Doe, John Doe II, and John Doe III were boarding students at St. Stephen's in Austin,

Texas, during the mid-to-late-1960s.  (D.E. 46, p. 3.)  John Doe began ninth grade at St. Stephen's in 1964, John Doe II began eighth grade at St. Stephen's in 1965, and John Doe III began tenth grade at St. Stephen's in 1967.  (Id. at 3-4.)  From 1958 to 1968, Defendant James Lydell Tucker, who was at that time an ordained Episcopal priest, served as a chaplain and a member of the faculty at St. Stephen's.  (Id., at 3.)  Defendant Tucker also served as a faculty adviser at the school.  (Id., 4-5.)  Plaintiffs allege that Defendant Tucker was a "constant, frequent visitor to the boys' dormitories for open late-night group consultations and discussions", and that while visiting with students in their dormitory rooms in the dark, "Defendant Tucker molested, sexually abused and exploited" the three Plaintiffs on several occasions from 1964 to 1968.  (Id. at 5.)  Plaintiffs claim that the Episcopal Diocese of Texas, St. Stephen's, the headmasters of St. Stephen's and the authorities of the Episcopal church all knew or should have known of the molestation by Defendant Tucker.  (Id. at 6-9.)

After Defendant Tucker was dismissed from St. Stephen's Episcopal School, he was placed at St. Luke's hospital in Houston, Texas where he underwent "therapy for a year or so" before beginning work at St. James School in Houston.  (D.E. 33, p. 11; Hearing on Motion to Transfer, June 22, 2009 (statement of Defense counsel)).  Defendant Tucker currently resides in Houston.  (Hearing on Motion to Transfer, June 22, 2009 (statement of Plaintiff's counsel)).  It was not until 2007 that Defendant Tucker was defrocked in Houston.  (D.E. 33, p. 6.)

Plaintiffs first filed suit against the St. Stephen's Defendants, the Episcopal Diocese Defendants, and Defendant Tucker on September 8, 2008 (D.E. 1).  Plaintiffs filed their First Amended Complaint on September 10, 2008 (D.E. 3), their Second

Amended Complaint on October 16, 2008 (D.E. 16), and their Third Amended Complaint on May 28, 2009 (D.E. 46.) Plaintiffs' Third Amended Complaint is the current operative pleading before the Court. In their Third Amended Complaint, Plaintiffs bring the following claims against the above-listed Defendants: civil conspiracy, negligence, fraud and fraudulent concealment, breach of fiduciary duty and negligent misrepresentation. Plaintiffs also bring a vicarious liability claim against St. Stephen's and the Episcopal Diocese of Texas, for the acts of Defendant Tucker. Further, Plaintiffs allege that the Defendants acted with gross negligence and malice. (D.E. 46.)

During the initial pretrial conference, held on November 4, 2008, Defendants considered whether to request a transfer of this case to the Western District of Texas. (D.E. 33.) However, Mr. Barger, counsel for Defendants Wimberly and Protestant Episcopal Church Council, stated: "We would request the Court not to do anything yet. We may make an official request. We want to see if we can't work through a resolution of this issue … before we start doing something like that." (D.E. 33, p. 23.) The current motion to transfer this case to the Western District of Texas was not brought until April 16, 2009. (D.E. 39.) Plaintiffs filed their response on May 6, 2009.[1] (D.E. 40.) For the reasons set forth below, this motion to transfer venue is denied.

### III. Discussion

### A. Standard for motion to transfer venue to a different district under 28 U.S.C. § 1404

---

[1] On May 15, 2009, Defendants St. Stephen's Episcopal School, Robert Kirkpatrick, Protestant Episcopal Church Council, and Reverend Don Wimberly moved for leave to file a Reply to Plaintiffs' Response to the motion to transfer. Although "[n]o reply to the opposition to a motion will be filed by movant without leave of Court on good cause," this Court has considered Defendants' Reply in the interest of justice. (D.E. 4, p. 7.)

A district court may transfer venue of a case to another district in which the case might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice," or "upon motion … in the discretion of the court." 28 U.S.C. § 1404. "There can be no question but that the district courts have broad discretion in deciding whether to order a transfer." In re Volkswagen of America, Inc., 545 F.3d 304, 311 (5th Cir. 2008).

The threshold question under 28 U.S.C. § 1404(a) is whether the case "might have been brought" in the Western District of Texas. In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003); see also In re Volkswagen AG, 371 F.3d 201, 202 (5th Cir. 2004) ("[T]he first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.") Here, the case might have been brought in the Western District of Texas pursuant to 28 U.S.C. § 1391(a) because all Defendants reside in Texas and St. Stephen's Episcopal School resides in the Western District of Texas.  28 U.S.C. § 1391(a) ("A civil action wherein jurisdiction is founded only on diversity of citizenship may … be brought … in a judicial district in which any defendant resides, if all defendants reside in the same State.")

Because this case might have been brought in the Western District of Texas, this Court must next analyze the eight "private and public interest factors" to determine "whether a  § 1404(a) venue transfer is for the convenience of parties and witnesses and in the interest of justice." In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008.)  The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004.) The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." Id. Although these factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive. Moreover … 'none … can be said to be of dispositive weight.'" Id. citing Action Indus., Inc. v. U.S. Fid. & Guar. Corp., 358 F.3d 337, 340 (5th Cir. 2004).

### B. The private interest factors

The private interest factors weigh in favor of not transferring the case. In light of the fact that the school at which the alleged abuse took place is located in Austin, Texas, which is in the Western District of Texas, it is true that much of the evidence and many of the witnesses are located there. However, plaintiffs have also identified evidence and witnesses located in Corpus Christi, Texas, including John Doe II's three sisters, and "those individuals in Corpus Christi who submitted personal recommendations during the admissions process at St. Stephen's concerning Doe II's abilities and character." (D.E. 40) At the time of the alleged abuse, Doe II's permanent place of residence was Corpus Christi. (D.E. 40, Ex. )

More importantly, the fourth factor regarding "all other practical problems that make trial of a case easy, expeditious and inexpensive" weighs heavily in favor of not transferring the case. Plaintiffs originally brought suit on September 8, 2008 (D.E. 1.)

Yet, Defendants failed to bring this motion to transfer until April 16, 2009, over seven months later. (D.E. 39.)  "Parties seeking a change of venue should act with reasonable promptness" Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989) (citations omitted).  See also McGraw-Edison Co. v. Van Pelt, 350 F.2d 361, 363 (8th Cir. 1965) (affirming the district court's denial of the party's motion to transfer on the grounds that it was "untimely, in that [it] had not been made until approximately five months after the suits were filed, during which time there had occurred extensive preparation and expense on the part of [plaintiff's counsel]"); see also McKethan v. Texas Farm Bureau, 996 F.2d 734, 739 (5th Cir. 1993) ("The court acted within its discretion in ruling that McKethan's motion, filed over four months after notice and approximately ten days before trial, was far too late in the day."); see also Salem Radio Representatives, Inc. v. Can Tel Market, 114 F.Supp. 2d 553, 558 (N.D. Tex. 2000) ("[M]otions for change of venue must be filed with reasonable promptness") (citations omitted).

At the time of the initial pretrial conference, Defendants had all of the information necessary to move to transfer this case to the Western District of Texas.  (D.E. 33, p. 23.) In fact, during the initial pretrial conference, counsel for Defendants noted, "why is the lawsuit in Corpus Christi, because the diocese is in Houston, the school is in Austin … and all the plaintiffs are out of state and there's no connection here." (D.E. 33, p. 23.) Defendants, however, chose to wait to file their motion to transfer on April 16, 2009. Defendants contend that they did not want to "fight" over transferring the case or discovery until they got through mediation. (Hearing on Motion to Transfer, June 22, 2009 (statement of defense counsel))  Defendants argued that "any pushback from the Defendants at an early stage would be taken … in a negative light … by the Plaintiffs …

and make it more difficult to work through the mediation process to settle." (Id.) However, given that Defendants filed a motion to dismiss back in October 2008, this explanation for the delay is disingenuous. (D.E. 19.) The Court therefore finds that transferring the case at this time will not further the convenience of the parties, nor is it in the interest of justice.

### C. The public interest factors

The first, third, and fourth public interest factors are neutral with respect to the issue of whether this case ought to be transferred. The second factor of a "local interest in having localized interests decided at home," does not weigh so heavily in favor of the Western District of Texas hearing this case as to warrant a transfer, when considered in light of all of the factors. While it is true that the Western District of Texas houses the school in which the alleged abuse took place, the Southern District of Texas was home to Doe II from when he was born in 1951 until 1990. (D.E. 40, Ex. 5) The Southern District of Texas is also home to Doe II's three sisters, who are witnesses in this action. (Id.) Therefore, both the Southern District and the Western District have significant interests in hearing this case. Thus, to the extent that "he who seeks the transfer" has the burden to "show good cause" for it, a transfer is not warranted when both the private and the public interest factors are analyzed.

Moreover, "[a]lthough a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a significant burden on the movant to show good cause for the transfer …. Th[e movant's] 'good cause' burden reflects the appropriate deference to which the plaintiff's choice of venue is entitled. When viewed in the context of § 1404(a), to show good cause means that a

moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is 'for the convenience of parties and witnesses, in the interest of justice." In re Volkswagen of America, Inc., 545 F.3d 304, 315 (5th Cir. 2008). In light of the analysis above, a transfer is not warranted in this case.

## V.     Discovery Motions

### a.  Vague or ambiguous words

Defendants filed a sealed discovery motion to compel answers to their request for admissions, which was also addressed at the June 22, 2009 hearing. Specifically, Defendants argued that Plaintiffs improperly objected to the following terms as vague and ambiguous: "sexually abused," "sexual abuse," "abused," "attempted abuse," "fondled," "consciously aware,"[2] "reported," and "the 1990s." (D.E. 47, p. 3-5.) Plaintiffs' objections to these terms as vague and ambiguous are without merit. For one thing, the Court notes that Plaintiffs used several of these words in their own pleadings and that these words speak to the very heart of their lawsuit, which is about sexual abuse. (D.E. 46, Plaintiff's Third Amended Complaint, using the terms "sexually abused," "sexual abuse," "abused," and "reported.") To use these words in their own complaint, and then claim that these words are vague or ambiguous, is disingenuous. Each of these words should be given their plain meaning, and Plaintiffs are not entitled to avoid responding to Defendants' requests for admissions on the basis that these words are vague or ambiguous.

### b.  Privileges

---

[2] The Court notes that Defendants have offered a definition for "consciously aware" to mean: "'knew' as opposed to 'did *not* know.'" (D.E. 47.)

8 / 10

Under Federal Rule of Evidence 501, "privilege questions are generally governed by the federal courts' interpretation of federal common law, except when state law supplies the rule of decision, in which case state law on privilege governs." Newpark Environ. Ser. v. Admiral Ins. Co., 2000 WL 136006 (E.D. La. 2000) citing U.S. v. Moore, 970 F.2d 48, 50 (5th Cir.1992.)  Because this case is based on diversity jurisdiction, Texas privilege law applies.  Alpert v. Riley, 2009 WL 1226767 (S.D. Tex. 2009) ("[S]tate privilege law applies in a diversity case involving only state law.")

### i. Husband-wife privilege

Under Texas law, "a person … has a privilege during marriage and afterwards to refuse to disclose and to prevent another from disclosing confidential communication made to the person's spouse while they were married." Tex. R. Evid. 504.  "The confidential communication privilege may be claimed by the person … or by the spouse on the person's behalf." Id.  "[A] person has a privilege during marriage and afterwards to refuse to disclose and to prevent another from disclosing a confidential communication made to the person's spouse while they were married." Dodson v. State, 2006 WL 1766036 (Tex.App.-Houston 2006).

During the hearing, counsel for Plaintiffs represented that each of the Plaintiffs answered all of the questions Defendants' counsel posed regarding spousal communications.  Therefore, because these communications are no longer confidential, Plaintiffs have waived their right to claim the husband-wife privilege as a means of not answering Defendants' request for admissions.  Tex. R. Evid. 504;

### c. Clergy-penitent privilege

Under Texas Rules of Evidence, "a person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a member of the clergy in the member's professional character as spiritual advisor." Tex. R. Evid. 505(b). However, "[i]n a proceeding regarding the abuse or neglect of a child, evidence may not be excluded on the ground of privileged communication except in the case of communications between an attorney and client." Tex. Family Code § 261.202. Plaintiffs are not entitled to assert the clergy-penitent privilege here, because this case involves the sexual abuse of a child. ("[Section 261.202] prohibits the exclusion of evidence on the grounds of privileged communication in a proceeding regarding the abuse or neglect of a child.") See also Ginsberg v. Fifth Circuit Court of Appeals, 686 S.W. 2d 105, 108 ("A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action.")

### VI. Conclusion

For the reasons set forth above, the Court hereby DENIES Defendants' motion to transfer venue. (D.E. 39.) The Court GRANTS Defendants' motion to compel answers to request for admissions. (D.E. 47.) Defendants are ORDERED to provide Plaintiffs with a redacted copy of the letter that was discussed during the hearing and was sent out to all of the victims of Defendant Tucker letting them know of the existence of this suit.

SIGNED and ORDERED this 26th day of June, 2009.

_____
Janis Graham Jack
United States District Judge